UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA          :

   -v.-                                           :          17 Cr. 373 (KMK)

NICHOLAS SZUCS,                            :

                  Defendant.          :

------------------------------------------------------------x


# GOVERNMENT'S SENTENCING MEMORANDUM


                                                   GEOFFREY S. BERMAN
                                                   United States Attorney
                                                   Southern District of New York
                                                   Attorney for the United States of America


Jennifer L. Beidel
Assistant United States Attorney
- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA            :

   -v.-                                                  :        17 Cr. 373 (KMK)

NICHOLAS SZUCS,                              :

                    Defendant.              :

---------------------------------------------------------------x

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Nicholas Szucs, is scheduled to be sentenced on September 13, 2018, at 11:30 a.m.  The Government respectfully submits this memorandum in connection with the sentencing of the defendant, and in response to the defendant's sentencing submission, dated September 7, 2018 ("Def. Submission").

## PRELIMINARY STATEMENT

Although the defendant stipulated to a Guidelines range of 121 to 151 months' imprisonment, and the Probation Office has recommended a sentence of 48 months' imprisonment, the defendant asks the Court to impose a non-incarceratory sentence of time served.  As set forth in more detail below, the defendant's arguments should be rejected, particularly in light of (a) the volume of images and videos that the defendant downloaded and accessed and the graphic and exploitative nature of those images; and (b) the defendant's position of public responsibility while engaging in his conduct—as both a teacher in two schools and a provider of private music instruction within the homes of minors.  These case-specific considerations militate against the defendant's proposed sentence of time served—an outcome that is not only contrary to the intent of both Congress and the Sentencing Commission, but also

1

is contrary to the considerations this Court must assess in applying 18 U.S.C. § 3553(a). For all the reasons set forth below, the Government believes that an incarceratory sentence within the Guidelines range of 121 to 151 months' imprisonment would be fair and appropriate in this case.

## BACKGROUND

### I. Offense Conduct

In early 2015, New York State investigators discovered that an IP address belonging to the defendant had been used to download child pornography via a peer-to-peer program called BitTorrent. (PSR ¶ 6). New York State investigators then executed a search warrant at the defendant's apartment and seized an external hard drive. The defendant, who was not home at the time of the search, later called law enforcement, believing that his apartment had been vandalized. Later the same day, the defendant met with law enforcement. During the meeting, the defendant admitted that the seized external hard drive was his and that he had used peer-to-peer programs in the past. The defendant also stated that he had another computer at his girlfriend's house. But, the defendant denied using BitTorrent and asked for a lawyer when asked if he had ever downloaded child pornography. After the meeting with the defendant, law enforcement obtained a search warrant for his girlfriend's house and seized the defendant's computer and cell phone. (PSR ¶ 7).

A forensic review of the defendant's external hard drive and laptop revealed that, from at least 2012 through April 2015, the defendant used BitTorrent to amass a collection of more than 2,000 images and more than 300 videos of child pornography. The videos ranged in length from several seconds to over an hour each. (PSR 9). The defendant also meticulously catalogued his pornography collection by separating "adult pics" from "UA" for underage. (PSR ¶ 10). Many of the filenames in the defendant's collection expressly revealed that they were child

pornography, containing words like "preteen," "child," "children," "childporn," or "PTHC," which stands for preteen hard core. (PSR ¶ 10). As discussed in more detail in PSR paragraph 11, the images in the defendant's collection are graphic and include depictions of bondage, bestiality, necrophilia, rape and sodomy, rape and sodomy with various objects, oral sex, and fondling of pre-pubescent children. (PSR ¶ 11).

The defendant claims that his initial interest in child pornography arose because he learned of his then-wife's child sexual abuse and wanted to view similar images as a way to assist him in empathizing with her about it. (PSR ¶ 57). The defendant also attempts to minimize his conduct by explaining that he "deleted whatever [he] was repulsed by" and was only interested in "older adolescent girls." (PSR ¶ 57). The descriptions set forth in paragraphs 10 and 11 of the PSR, however, suggest that the defendant consciously kept files depicting pre-pubescent girls (descriptors like "8Yo," "10 Yo," and "Toddler" appear in the filenames) and files that included graphic images of bondage, beastiality, sex with unconscious children, and other heinous acts. (PSR ¶¶ 10, 11).

A forensic review of the defendant's cell phone revealed that he engaged in efforts to encourage the deletion of evidence. The defendant sent four text messages to his now-wife on the day of the searches discussed above, which amounted to instructions to get his computer out of her house. Thankfully, the defendant's now-wife did not comply with his request, so law enforcement was still able to recover his laptop, revealing the disturbing content described above. (PSR ¶¶ 8, 18).

The defendant was arrested and charged by complaint on May 20, 2016 and released on a bond with home detention. At the time of his arrest, the defendant gave private violin lessons to children and was a music teacher at two schools for minors. The defendant has since resigned

from his school positions as a result of his arrest. However, he still teaches private lessons. (PSR ¶ 12).

## II.     The Defendant's Plea and Applicable Guidelines Range

On June 14, 2017, the defendant pleaded guilty to a one-count Information, charging that, from at least 2012 through April 2015, he possessed images of child pornography, including images of prepubescent minors and minors under 12 years of age, on a computer located in Westchester, New York, in violation of 18 U.S.C. 2252A(a)(5)(B) and (b)(2). (PSR ¶¶ 2, 4).

All parties are in agreement regarding the applicable Guidelines-range in this case, which is set forth in both the plea agreement and the PSR. The base offense level of 18 is properly increased to 35 based on the following enhancements:

1. a two-level increase because the child pornography involved young children;

2. a four-level increase because the child pornography portrays sadistic or masochistic conduct or other violence;

3. a five-level increase because the defendant possessed more than 600 images of child pornography;

4. a two-level increase because the defendant distributed the child pornography;

5. a two-level increase because the distribution involved a computer, specifically, a peer-to-peer file sharing website; and

6. a two-level increase for obstruction of justice because the defendant instructed his now-wife to remove a computer containing child pornography from her home. (PSR ¶¶ 5, 20-41). Applying a three-level reduction due to the defendant's acceptance of responsibility and timely notice of his intention to plead guilty yields an offense level of 32. (PSR ¶¶ 5, 20-41).

4

The defendant has no criminal history, other than a 1993 possession of marijuana arrest, and falls in Criminal History Category I. This results in a Guidelines Range of 121 to 151 months' imprisonment. (PSR ¶¶ 5, 20-41; PSR at 22).

The Probation Office recommends a sentence of 48 months' incarceration, five years of supervised release, and at least $5,000 in restitution. (PSR at 22).

## DISCUSSION

### I. The Guidelines Range Appropriately Reflects the Seriousness of the Offense Conduct, Promotes Respect for the Law, and Provides Just Punishment

A significant incarceratory sentence in this case is necessary to reflect the seriousness of the defendant's offense, promote respect for the law and its efforts to eradicate the distribution of child pornography, and provide just punishment for this offense. *See* 18 U.S.C. § 3553(a)(2). As the Second Circuit has noted,

> there can be no question that the dissemination of child pornography is a serious crime that causes real injury to particularly vulnerable victims. As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such pornography, but that harm is exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.

*United States* v. *Reingold*, 731 F.3d 204, 216 (2d Cir. 2013); *see also New York* v. *Ferber*, 458 U.S. 747, 757-59 & nn. 9-10 (1982) (citing congressional and scholarly reports, and court cases). It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States* v. *Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," *New York* v. *Ferber*, 458

5

U.S. at 757, and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, *Osborne* v. *Ohio*, 495 U.S. 103, 110 (1990).

The defendant's conduct involved significant and repeated use of peer-to-peer software to download files containing child pornography, over a period of <u>eight years</u>.[1]  In fact, at the time of the search, the defendant had retained and catalogued more than 2,000 images and more than 300 videos of child pornography, many of which contained egregious depictions of graphic abuse of young, pre-pubescent victims.  Indeed, a description of the contents of only a few of the videos is upsetting and demonstrates the abuse suffered by the children involved.  (PSR ¶ 11).  And, the titles of the video and photo files that the defendant downloaded and meticulously catalogued make clear that the defendant, in choosing to download, sort, and retain these items, had a particular interest in the graphic abuse of preteen children, including children described as "toddlers," "preteens," and eight- and ten-year-olds.  (PSR ¶ 10).

Not only did the defendant download these files, he specifically sorted them into a folder that he had labeled as "UA" for underage and deliberately chose to retain them, unlike other images that he claims to have deleted because they "repulsed" him.  (PSR ¶¶ 10, 57).  It is hard to imagine what the defendant's standard for supposed "repulsion" is when he elected to retain videos of bondage and sodomy of pre-pubescent girls, rape of an unresponsive pre-pubescent girl, and bestiality and rape of a pre-pubescent girl.  (PSR ¶ 11).  More likely, the defendant's supposed "repulsion" at certain images is an excuse he concocted after he was caught in this case or a defense mechanism that is designed to prevent him from accepting the truth about the depravity of his conduct.  (*See* PSR ¶ 62 (the defendant describes himself as building "defense

---

[1] The defendant apparently admitted during his psychosexual evaluation that he began downloading child pornography in 2007 (Def. Sub., Ex. E at 5, 11), but reported to the Probation Office that he began downloading child pornography in 2011 (PSR ¶ 57).

mechanisms from knowing the truth" and as an "excuse maker")). Setting the defendant's excuses aside and considering instead the nature of the images that the defendant chose to sort and collect yields a clearer picture of the defendant's intent at the time that he committed this crime – to consume massive amounts of depraved images of child pornography.

In response, the defendant raises a number of grounds that supposedly mitigate his conduct. First, the defendant asserts that the number of images he possessed is mitigated by the presence of child erotica and duplicate files within his collection and by his use of peer-to-peer software to download large batches of child pornography at once. (Def. Submission at 18-20). But, the fact remains that the defendant was a consumer of child pornography for nearly a decade. The defendant consumed that child pornography at such a rate that he elected to source it from a peer-to-peer sharing website that defense counsel admits is essentially a "Costco-style," bulk supplier of child pornography. (Def. Submission at 19-20). And, in the single snapshot of time during which the agents searched his computer, the defendant possessed thousands of images and hundreds of videos of child pornography. If anything, the number of files found during the search likely underrepresents the defendant's consumption of abusive images for eight years. This is especially true given the defendant's admissions that in 2013, years before the search, he was viewing "pornography for hours" each day, that "child pornography would occupy half that time," and that he used multiple peer-to-peer sharing networks to download whole folders of pornography, only keeping what he "liked." (Def. Submission, Ex. E at 5).

In fact, the defendant's use of a "Costco-style," computer file-sharing program exacerbates the harm that his crime caused. As was aptly explained by the Second Circuit in *Reingold*:

> The ease with which a person can access and distribute child pornography from his home—often with no more effort than a few clicks on a computer—may make it

> easier for perpetrators to delude themselves that their conduct is not deviant or harmful. But technological advances that facilitate child pornography crimes no more mitigate the real harm caused by these crimes than do technological advances making it easier to perpetrate fraud, traffic drugs, or even engage in acts of terrorism—all at a distance from victims—mitigate those crimes. If anything, the noted digital revolution may actually aggravate child pornography crimes insofar as an expanding market for child pornography fuels greater demand for perverse sexual depictions of children, making it more difficult for authorities to prevent their sexual exploitation and abuse.

*Reingold*, 731 F.3d at 217; *see also United States* v. *Lewis,* 605 F.3d 395, 403 (6th Cir. 2010) (noting that distribution through computers "is particularly harmful because it can reach an almost limitless audience" (internal quotation marks omitted) (citing H.R.Rep. No. 104-90, at 3-4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 759, 760-61)); *cf. Harmelin* v. *Michigan,* 501 U.S. at 1002-03 (Kennedy, J., concurring) (observing that characterization of drug possession with intent to distribute as "nonviolent and victimless" crime "is false to the point of absurdity" given "pernicious effects" of drug use). The very reason for peer-to-peer networks on the Internet is to facilitate widespread access to files—including, for the defendant, child pornography—and transmitting those files easily, readily, and speedily. The defendant's use of peer-to-peer programs to download and access child pornography was further expansion of the expedited market for child pornography and added yet more fuel to the demand for perverse sexual depictions of children. And, the defendant's use of peer-to-peer programs allowed him to further victimize specific children. As the defendant admits, if he saw a "model" (a/k/a, a child) that he liked on a peer-to-peer program, he would try to download the "whole series of images" for that "model." (Def. Submission at 5). In other words, one image of a child being abused was not enough for the defendant. If he saw an image he liked, he wanted more images of that abused child, further exacerbating the harm to that victim.

  Second, the defendant asserts that his conduct is mitigated by the fact that he did not alter the file names in his child pornography collection or otherwise seek to encrypt the collection.

8

(Def. Submission at 20). While that may be true, the defendant also chose to initially deny using the "Costco-style" file-sharing program at issue and to send his now-wife four separate text messages amounting to instructions to destroy his computer containing child pornography. (PSR ¶¶ 7-8). A defendant who commits a crime and then attempts to destroy evidence "in an unlawful attempt to avoid responsibility," as the defendant did here, "is more threatening to society and less deserving of leniency." *Cf. United States* v. *Dunnigan*, 507 U.S. 87, 97 (1993) (recognizing that "a defendant who commits a crime and then perjures [him]self in an unlawful attempt to avoid responsibility is more threatening to society and less deserving of leniency"). The defendant's denials and efforts to obstruct justice are further evidence that he knew he was committing a crime each time he downloaded child pornography and demonstrate his desire to conceal his wrongdoing.

Third, the defendant argues for leniency on the grounds that he "was not a subscriber to online pornography websites," "never chatted or exchanged inappropriate messages or sexual texts with minors," and never had or attempted to have any sexual contact with minors. (Def. Submission at 20). These arguments reflect a failure by the defendant to appreciate the full extent of the harm created by his actions, which is consistent with his self-assessment that he "at times does not think of the consequences of his actions." (PSR ¶ 62). As an initial matter, the mere possession of videos and images of abuse—regardless of whether the defendant paid for those images—fosters a market for more abuse. *See, e.g.*, *United States* v. *Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming 120 month sentence where district court had "observed that, contrary to [the defendant's] contention, his crimes are not victimless because they create[] a market for child pornography and thus harm children, scarr[ing] [them] for life" (internal quotation marks omitted)); *United States* v. *Miller*, 594 F.3d 172, 189 (3d Cir. 2010)

9

("[P]ossession of even a small number of images of child pornography contributes to the victimization of children and creates a market for child abuse." (internal quotation marks omitted)). And, specific to this case, the many victim impact statements that were submitted attest to the harm that the actions of the defendant and others caused. There are at least 11 known victims in this case and countless other victims who have not been, and may never be, identified. The identified victims say, nearly unanimously, that the defendant's actions contributed to an unjust cycle of child exploitation by contributing to the demand for these grotesque images. The victims and their families continue to struggle with the aftermath of their abuse and the psychological toll it has placed on them. Some note that the continual viewing of their images by people like the defendant prevents them from healing fully because their "privacy is being repeatedly invaded." (PSR ¶¶ 15-16). Sure, the defendant's conduct could have been worse. But, the defendant's crime was far from victimless and has resulted in such serious harm to the defendant's victims that it calls for a serious sentence – far more serious than the requested sentence of time served, even when taking into account the contingent economic and other harms that the defendant describes having suffered after his arrest in this case.

Finally, the defendant points to certain of his personal characteristics – like his history of alcohol abuse and his need for treatment for that addiction and other of his medical conditions – as grounds for mitigation. (Def. Submission at 20-21, 23-24, 27-28). But, the defendant's long personal and family history of alcohol abuse is actually aggravating here. The prevalence of alcoholism in society tells us that alcoholism, and other addiction problems, are difficult to cure. While the defendant has shown improvement in this regard since his arrest, this improvement has come during a time when the defendant knows he faces a significant period of incarceration. When the pressures of imminent incarceration are removed, or if the defendant faces an

unforeseen personal crisis, he may very well find himself tempted to resume his alcohol use and, with that, may come the temptation to resume his viewership of child pornography. As noted in the defense submission, the defendant's addiction to alcohol and viewership of child pornography have been linked in the defendant's past: "Mr. Szucs suffers from addiction to substances, most significantly alcohol, making him susceptible to an addiction to the Internet, in this case Internet child pornography." (Def. Submission at 12). And, as regards his need for medical and addiction treatment, the defendant can receive treatment for his addiction issues in prison, which is certainly an environment in which alcohol is less available than it is on the street. Regarding his medical issues, absent a showing by the defendant that Bureau of Prison facilities are insufficient, which the defendant has not made here, the defendant's medical conditions are not a ground for a reduced sentence. *See, e.g., United States* v. *Altman*, 48 F.3d 96, 104 (2d Cir. 1995).

## II.     The Defendant's Arguments for a Time Served Sentence Are Not Persuasive

The defendant's request for time served with home confinement, in lieu of any incarceratory sentence, should not be granted. As discussed in the previous section, a substantial incarceratory sentence is necessary to reflect the seriousness of the offense, to promote respect for the laws that seek to eradicate the spread of child pornography on the Internet, and to mete out just punishment. A non-incarceratory sentence would create an unwarranted discrepancy between the defendant and other similarly situated individuals and would send the wrong message about the consequences of downloading and sharing the most graphic images of child pornography.

<u>First</u>, the defendant asserts that a time served sentence and the attendant consequences of his having pleaded guilty to this offense would be sufficient punishment, especially given his

11

loss of various jobs he has suffered as a result of the offense, among other factors. (Def. Submission at 24-26). The defendant also argues that registering as a sex offender and submitting to supervision by Probation is a sufficiently harsh penalty. (Def. Submission at 25). To be sure, the consequences of a felony conviction, particularly with respect to a sexual offense, are substantial and burdensome, but these are repercussions that all convicted child pornography defendants must face. In the defendant's case, where the videos and images he catalogued and collected were graphic and exploitative, and where the defendant admitted downloading huge quantities of child pornography over the course of eight years, the collateral consequences he has faced and will face in the future for his crime do not constitute sufficient reason to grant him a non-incarceratory sentence. Rather, the nature of the defendant's conduct, regardless of whether he sincerely recognizes its gravity and the harm it has caused, warrants a significant incarceratory sentence. Nor would a time-served sentence account for the fact that the defendant initially lied to law enforcement and then attempted to obstruct justice by telling his now-wife to destroy evidence. While no evidence was actually destroyed and while the defendant ultimately admitted his conduct, the defendant's obstructive conduct must be penalized appropriately to deter the defendant and others from engaging in such conduct.

Second, the defendant's submission cites the evaluations of Drs. Termini, McCarthy and Kreuger, who have opined that, in their view, the defendant is not at a high risk to reoffend.[2] However, there are troubling aspects of these medical opinions that the defendant has chosen not to highlight in his submission. Initially, the defendant routinely attempts to minimize in his statements to Dr. Termini. Despite the nature of his child pornography collection and the other

---

[2] The Government notes that only the report of Dr. Termini is attached to the Defense Submission. (*See* Def. Submission, Ex. E). The other two opinions have not been provided to the Government.

12

evidence outlined in detail above, the defendant claims that he was "bothered" by images of "people doing stuff against their will" and "repulsed" by material containing pre-pubescent individuals. (Def. Submission, Ex. E at 6, 11). The defendant also claims that "the material of minors on his computer that was found by law enforcement was of material that he did not delete because he either had never watched it or was careless." (Def. Submission, Ex. E at 6-7). And, the defendant claims that he did not actively trade files on peer-to-peer networks but accidentally did so "on at least one occasion," which is "how he was caught by law enforcement." (Def. Submission, Ex. E at 5). These statements are belied by his acceptance of several of the Guidelines enhancements in the plea agreement (like the enhancement for distribution via computer) and by other of his statements in which he admits to carefully sorting and maintaining his child pornography collection.

Next, when conducting a test called the "Personality Assessment Inventory," Dr. Termini notes that the defendant's responses "indicated that he may not have answered in an entirely forthright manner." (Def. Submission, Ex. E at 9). Dr. Termini continues, "His responses showed that he tended to portray himself as being exceptionally free of common shortcomings to which most individuals will admit." (Def. Submission, Ex. E at 9). As a result, Dr. Termini found that the defendant was reluctant to admit even "minor faults, perhaps not admitting them to himself" and "may be blindly uncritical of his own behavior and insensitive to negative consequences associated with his behavior, tending to minimize the negative impact that his behavior has on others and on himself." (Def. Submission, Ex. E at 9). On a separate test of "social desirability," or a person's "unwillingness to admit to any violation of common social mores," the defendant obtained a score in the "high range" that indicates that he "may have difficulty admitting wrongdoing." (Def. Submission, Ex. E at 10).

13

Finally, still other tests revealed "moderate and severe concerns" regarding the defendant's report of sexual attraction to and masturbatory fantasies of sex with teenage girls ages 14 to 17 (Def. Submission, Ex. E at 10) and "a primary attraction to adolescent and adult females, followed by a tertiary attraction to school-aged females" (Def. Submission, Ex. E at 12).

Dr. Termini's opinions are only as solid as the factual foundation on which they are built. If the defendant held back from Dr. Termini, as his test results and contradictory statements seem to indicate, then Dr. Termini's conclusions must hold less weight. As in most any case involving child predation, the defendant claims to have never had or wanted sexual contact with children and claims to have been reformed post-arrest. But, the defendant's word, as someone reluctant to admit even minor faults and who has "illusions of invincibility" (PSR ¶ 59), cannot be trusted in these circumstances – not when the safety of children is at risk.

Third, relying on the Second Circuit's decision in *United States* v. *Dorvee*, 616 F.3d 174, 182 (2d Cir. 2010), the defendant asserts that the pertinent Guidelines section, U.S.S.G. § 2G2.2, is not based on a careful, empirical study usually conducted by the Sentencing Commission, but instead is the result of Congressional action, and therefore should be treated with less deference. (Def. Submission at 2-4). The defendant's arguments are unsupported by the law and the facts of this case, and should be rejected. As the Sixth Circuit explained in rejecting a similar argument:

> [T[he Constitution merely tolerates, rather than compels, Congress's limited delegation of power to the [Sentencing] Commission. And that context, we think, puts in a different light the various complaints, both within and without the judiciary, that Congress has encroached too much on *the Commission's* authority with respect to sentencing policy. That is like saying a Senator has encroached upon the authority of her chief of staff, or a federal judge upon that of his law clerk. . . . Congress can marginalize the Commission all it wants: Congress created it. Indeed it is normally a constitutional virtue, rather than vice, that Congress exercises its power directly, rather than hand it off to an unelected commission. The Constitution is fundamentally a democratic document, not a technocratic one.

14

*United States* v. *Bistline*, 665 F.3d 758, 762 (6th Cir.) (emphasis in original), *cert. denied*, 133 S. Ct. 423 (2012).

To be sure, the Second Circuit has acknowledged that the pertinent Guidelines section "is fundamentally different from most," because the offense level and enhancements have been increased at the instruction of Congress. *Dorvee*, 616 F.3d at 184. The Second Circuit has accordingly explained that the Guideline must be "applied with great care" to avoid "unreasonable sentences." *Id.* Such care is necessary because the enhancements apply with such frequency that they "routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Id.* at 186. (Here, the defendant's Guidelines Range is eight to ten years below the statutory maximum.) Nevertheless, the message of *Dorvee* is not, as the defendant suggests, that the factors that warrant Guidelines enhancements—many of which apply to the facts of this case—should be viewed with significantly less consideration by this Court in its fashioning an appropriate sentence. Rather, *Dorvee* instructs that these Guidelines enhancements—and indeed, the facts that trigger them—should be carefully considered, bearing in mind the frequency with which enhancements apply. *Dorvee* further acknowledges the importance of distinguishing between "run-of-the-mill cases" and other cases in determining whether a Guidelines sentence is the appropriate sentence.

*Dorvee* does not hold, however, that Guidelines sentences or even below-Guidelines incarceratory sentences are never appropriate. Indeed, the Second Circuit has affirmed multiple Guidelines sentences since *Dorvee* based on case-specific considerations, including in cases, like this one, that did not involve contact with a child. *United States* v. *Gouse*, 468 F. App'x 75, 78 (2d Cir. 2012) (affirming 120-month sentence for possession of child pornography, where there was no evidence that the defendant had had inappropriate contact with a child or had distributed

15

child pornography); *United States* v. *Magner*, 455 F. App'x 131, 134-35 (2d Cir. 2012) (affirming 108-month sentence in similar circumstances); *United States* v. *Aumais*, 656 F.3d 147, 157 (2d Cir. 2011) (affirming 121-month sentence for possessing and transporting child pornography given, among other things, "the violent nature of the images" and "the number of them").

Finally, the defendant asserts that a non-incarceractory sentence would not create an unwarranted sentencing disparity. (Def. Submission at 28-29). In support of this assertion, the defendant refers to cases in this district that led to incarceratory periods of 36 months or less. (Def. Submission, Ex. M). But, these cases are outliers for sentences imposed for child pornography offenses. As is highlighted by the United States Sentencing Commission's Report to Congress: Federal Child Pornography Offenses (December 2012) ("U.S.S.G. Rep't (Dec. 2012)"),[3] a non-incarceratory sentence for the defendant would most certainly result in a sentencing disparity. The Sentencing Commission reviewed the cases of 902 defendants nationwide in 2010 who were only convicted of possession of child pornography and found that 95.7% of defendants received incarceratory sentences. (U.S.S.G. Rep't (Dec. 2012) at 131). Only 3% were sentenced to probation, including either straight probation or probation with a condition of home or community confinement. *Id.* at 131.[4] In order words, the defendant is seeking a sentence that three percent of similarly situated offenders received.

---

[3] *Available at* http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses.

[4] The Sentencing Commission reviewed the cases of 157 defendants nationwide in 2010 who had a Criminal History Category of I, a base offense level of 18, and at least 13 offense level points (but no enhancement for distribution under § 2G2.2(b)(3)(F)), therefore having a Guidelines range of 78-97 months. (U.S.S.G. Rep't (Dec. 2012) at 213-14). Although the majority of defendants meeting these criteria were sentenced below the applicable Guidelines range, the average sentence was 52 months' incarceration. *Id.* at 214. Indeed, fewer than 15 defendants

Further, recent cases from this District and other districts within the Second Circuit establish instances where defendants received sentences substantially above the minimum, and their convictions were upheld. *See*, *e.g.*, *United States* v. *Barfield,* No. 11 Cr. 1086 (PGG) (S.D.N.Y. Feb. 6, 2013) (120 months for possession and distribution of child pornography); *United States* v. *Hagerman*, 506 F. App'x 14 (2d Cir. 2012) (97 months for possession and receipt of child pornography); *Gouse*, 468 F. App'x (120 months for possession of child pornography); *United States* v. *Manginelli*, 10 Cr. 925 (SJF) (E.D.N.Y. Oct. 15, 2012) (210 months for transportation of child pornography); *United States* v. *Henchey*, 443 F. App'x 617 (2d Cir. 2011) (120 months for possession and receipt of child pornography); *United States* v. *Aumais*, 656 F.3d 147, 157 (2d Cir. 2011) (121 months for possession and transportation of child pornography); *United States* v. *Ryan*, 406 F. App'x 565 (2d Cir. 2011) (90 months for transportation of child pornography).

Given the facts present here, a non-incarceratory sentence would be particularly inappropriate and unwarranted. The defendant committed his crimes while teaching children who were the same ages as those depicted in the images he downloaded and collected. There is no question that each time the defendant downloaded child pornography files (which he did for eight years), he knew that what he was doing was wrong, and he later took steps to erase the evidence of that knowing misconduct. The defendant did not self-report his crime; he did not stop his criminal conduct on his own; and his criminal conduct was not a fleeting aberration. Rather, while teaching children both at school and in their homes, the defendant was secretly

---

(less than 10%) received non-incarceratory sentences and fewer than 25 (less than 15%) received sentences of 12 months or less. *Id.*

17

committing crimes that involved the serious exploitation of children.  This conduct warrants a significant period of incarceration.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully submits that a sentence within the Stipulated Guidelines range would be fair and appropriate, and would be sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing in this case.

Dated: White Plains, New York
September 11, 2018

                Respectfully submitted,

                GEOFFREY S. BERMAN
                United States Attorney

By:    /s/ Jennifer L. Beidel_____
       Jennifer L. Beidel
       Assistant United States Attorney
       Southern District of New York
       (212) 637-2212

cc:  Jason Ser, Esq.